IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DERRICK WILCOX,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:21-CV-1009-L** |
| | § | |
| **WAL-MART STORES TEXAS, LLC,** | § | |
| | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Defendant's Motion for Summary Judgment (Doc. 28), filed November 18, 2022. For the reasons herein explained, the court **grants** Defendant's Motion for Summary Judgment ("Motion") (Doc. 28).

**I.      Factual and Procedural Background**

Derrick Wilcox ("Mr. Wilcox" or "Plaintiff") brought this action in state court on March 24, 2021, against Wal-Mart Stores of Texas, LLC ("Walmart" or "Defendant"), alleging a single claim of negligence under Texas law.[1]  He seeks monetary damages for past and future medical expenses and lost wages, pain and suffering, mental anguish, attorney's fees, and costs for injuries sustained on March 17, 2020, while employed as a truck driver for National Freight, Inc. ("NFI"). He transported a refrigerated trailer from a Walmart distribution center, where it was loaded by Walmart personnel, to a Walmart store located in Rowlett, Texas. He contends that the refrigerated trailer was owned by, maintained by, and under the control of Walmart, and that Walmart failed to maintain and keep it in safe working condition.  He further contends that, because Walmart

---

[1] Unless otherwise indicated, the facts referenced in this memorandum opinion and order are undisputed.

owned and had control over the trailer in question, it owed him a duty to maintain the trailer in a safe condition.

Mr. Wilcox's injuries were sustained after arriving at the Rowlett Walmart store and while preparing the refrigerated trailer for unloading by Walmart personnel.  Mr. Wilcox opened the door of the refrigerated trailer, opened the bulkhead, and secured it to the trailer ceiling,[2] but the frayed and worn rope that he used to secure it to the ceiling gave way, allowing the bulkhead to fall and strike him on the top of his head.  Mr. Wilcox was able to finish his route that day, but he was later diagnosed with a concussion and acute vertigo.  He received medical care for his injuries through his employer's workers' compensation insurance. Dissatisfied with the medical care he was receiving through NFI's workers' compensation insurance, Mr. Wilcox obtained personal medical insurance in December 2021 that he used to obtain additional treatment.

The parties dispute whether the workers' compensation benefits that Mr. Wilcox's received as an employee of NFI are his exclusive remedy for the injuries he sustained. The parties also dispute whether Walmart can be liable for the injuries Mr. Wilcox sustained as an employee of NFI in light of his having obtained some medical care through his employer's workers' compensation insurance, and given the contractual relationship between Walmart and NFI, which Walmart contends is one between general contractor (Walmart) and independent contractor (NFI). In particular, the parties disagree whether, under the Transportation Agreement between Walmart and NFI, Walmart retained control over refrigerated trailer maintenance and repair or the manner in which NFI maintained and repaired the refrigerated trailers.

---

[2] Plaintiff asserts, and it is undisputed, that "[t]he bulkheads are raised and lowered, similar to a garage door, by pulling a rope that is threaded through a pulley that lifts the front of the bulkhead and, after the bulkhead is tilted to the roof, the rope can be locked in place by engaging a cleat in the pulley. This allows a forklift or pallet jack to move under the bulkhead for ease of loading and unloading." Pl.'s Resp. 3 (citation omitted).

**Memorandum Opinion and Order - Page 2**

On May 4, 2021, Walmart removed the case to federal court based on diversity of citizenship. Thereafter, it moved for summary judgment on November 18, 2022, to which Plaintiff responded on December 8, 2022. The Motion was ripe on December 19, 2022, when Walmart filed its reply brief.

## II.      Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Mutual Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential

elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

III.    **Discussion**

A.  **Negligence Claim (Duty Owed by General Contractor)**

To establish negligence under Texas law, a plaintiff must show "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

Defendant contends that Plaintiff's negligence claim fails as a matter of law because: (1) to the extent any duties that were allegedly owed and breached, they were owed and breached by his employer NFI, not Walmart; (2) the Transportation Agreement between Walmart and NFI obligated NFI to maintain the refrigerated trailer at issue in good operating condition, including performing all maintenance and repairs; and (3) in suing Walmart, Plaintiff impermissibly seeks to circumvent his exclusive remedy under Texas's workers' compensation insurance system.

The parties' main dispute is whether Plaintiff can establish the existence of a duty as required for his negligence claim under Texas law. As indicated, they also disagree whether Walmart or NFI was responsible under the Transportation Agreement for maintaining the refrigerated trailers in good operating condition.  These issues are dispositive of Defendant's Motion.  The court's analysis, therefore, focuses on these issues and need not address Defendant's contention regarding workers' compensation insurance.

In *Elliott-Williams Co., Inc. v. Diaz*, 9 S.W.3d 801 (Tex. 1999), the Texas Supreme Court explained that a duty may arise when a general contractor retains actual or contractual control over an independent contractor's or subcontractor's work:

> A general contractor normally does not have a duty to see that an independent contractor performs work safely. But a duty may arise when a general contractor retains "some control over the manner in which the independent contractor's work is performed." The general contractor's duty of care is commensurate with the control it retains over the contractor's work. If the general

contractor has no control over the independent contractor's work, then a legal duty does not arise.

But actual control is not the only way a general contractor can retain control over an independent contractor. A contract may impose control upon a party thereby creating a duty of care. If the right of control over work details has a contractual basis, the circumstance that no actual control was exercised will not absolve the general contractor of liability. It is the right of control, and not the actual exercise of control, which gives rise to a duty to see that an independent contractor performs work in a safe manner.

For a general contractor to be liable for its independent contractor's acts, it must have the right to control the means, methods, or details of the independent contractor's work. Further, the control must relate to the injury the negligence causes, and the contract must grant the contractor at least the power to direct the order in which work is to be done.

The Restatement (Second) of Torts [§ 414 cmt. c (1965)] specifically outlines the degree of control necessary to create a duty:

[T]he employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Id.* at 803-04 (citations omitted).

In Texas, contract construction is done as a matter of law by the court when the contract's language is unambiguous and can be given a definite legal meaning or interpretation. *El Paso Field Servs., L.P. v. MasTec N. Am., Inc*., 389 S.W.3d 802, 806 (Tex. 2012) (citation omitted). A court's primary concern is to ascertain and give effect to the parties' intentions as expressed in the instrument. *See Forbau v. Aetna Life Ins. Co*., 876 S.W.2d 132, 133 (Tex. 1994) (citations omitted). The words of a contract are given their plain and ordinary meaning unless the contract indicates a different meaning was intended by the parties. *Dynegy Midstream Servs., Ltd. P'ship*

*v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009) (footnote and citation omitted). Courts also take into account the particular business activity to be served and, when possible and proper to do so, avoid a construction that is unreasonable, inequitable, and oppressive. *See Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam) (citation omitted). No provision is read in isolation; rather, each provision is considered with reference to the contract as a whole. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (citations omitted).

Walmart contends that the following language in Appendix B(2) of the Transportation Agreement regarding the maintenance of refrigerated trailers demonstrates that NFI alone was responsible for the maintenance of refrigerated trailers:

> **4. Refrigerated Trailer Maintenance.** *Carrier acknowledges that the trailers interchanged to Carrier* may be leased or owned refrigerated trailers ("Unit(s)"). All interchanged unit(s) *must be maintained in good operating condition and appearance*, normal wear and tear excepted, in accordance with the original manufacturer's specifications and recommendations as well as Walmart's requirements in this Attachment. Maintenance will include, *but not be limited to, washing of interior and exterior areas, preventive maintenance (PMs) and repair. Carrier will solely bear any expense incurred as may be required to maintain the Unit(s)* to meet the minimum required return conditions detailed below:
>
> . . . .
>
> f. <u>Required Maintenance</u>. *Regular maintenance by Carrier will include*, but is not limited to, *weekly washes of interior and exterior areas, repairs and PMs*. Carrier will use only original manufacturer's approved replacement parts and components in the performance of any maintenance and repair of the Unit(s).

Def.'s Summ. J. Br. 9 (quoting Def.'s App 24-25, ¶¶ 4, 4.f.) (emphasis added by Def.). Walmart further asserts that Plaintiff acknowledged when deposed that: (1) NFI drivers such as him were required to report any issues to NFI's dispatch and maintenance departments so that NFI could perform repairs and maintain the trailers in good condition, *id.* (citing Def.'s App. 93-94); and (2) Walmart was not notified or involved in the repair process. *Id.* (citing Def.'s App. 95).

Plaintiff argues that Walmart exercised actual or "complete control over the safety and maintenance of the trailers, . . . the trailer during the period of its possession for loading immediately prior to the event in question," and the Transportation Agreement does not support its contention that it had no control over such matters.  Pl.'s Resp. 7.  Plaintiff relies on the following language in the Transportation Agreement to show that Walmart retained ultimate control over the interior of trailers, whereas NFI had no control over the interior of trailers because they were sealed by Walmart before being transported by NFI: "Should Carrier [NFI] hook to (connect to) and tow Walmart provided Equipment, in addition to Carrier's inspection obligations under FMCSA regulations, Carrier will visually inspect the exterior of the Equipment trailers," and "Carrier will maintain shipments under seal at all times[.]"  Pl.'s Resp. 7 (quoting Pl.'s App. 6-7).[3]

Plaintiff further asserts that the language in Appendix F of the Transportation Agreement applicable to Walmart owned equipment creates a genuine dispute of material fact about the degree of control retained by Walmart over the interior of the trailer at issue because:

> The provisions of the Transportation Agreement that Walmart cites to say NFI had the sole responsibility to maintain or repair the trailers, do[] not appear to be applicable to trailers which are owned by Walmart. Appendix F to the Agreement applies to "Walmart-Owned Equipment". It provides "*Carrier will not perform, or cause others to perform, repairs or maintenance on the Equipment without first notifying Walmart and obtaining Walmart's express permission to repair*." The only way the provisions of the agreement cited by Walmart can be harmonized with this section is to understand that the maintenance NFI was responsible for was the motor-powered cooling units on the trailer—not the general interior structure of the trailer or the internal bulkheads.

Pl.'s Resp. 7-8 (citing and quoting Pl.'s App. 7) (emphasis added by Pl.).

The court disagrees.  As explained above, to create a duty of care, there must also be a nexus between the general contractor's retained control and the condition or activity that causes

---

[3] FMCSA refers to the Federal Motor Carrier Safety Administration.  *See* Def.'s App. 5.

**Memorandum Opinion and Order - Page 8**

the injury. *Elliott-Williams Co.*, 9 S.W.3d at 804 (citation omitted).  The injury here was attributable to equipment in the interior of the refrigerated trailer transported by Mr. Wilcox as part of his employment for NFI.  The Transportation Agreement contains a section that deals specifically with maintenance of refrigerated trailers and unambiguously makes NFI responsible for performing all such interior and exterior preventative maintenance and repairs.

On the other hand, the section of the Transportation Agreement relied on by Plaintiff pertains *generally* to NFI's liability for Walmart owned equipment that is lost, damaged, or destroyed while in the possession of NFI, unless the damage is caused by Walmart.  Pl.'s App. 7. In Texas, specific contractual provisions control over general provisions.  *In re Davis Offshore, L.P.*, 644 F.3d 259, 266 (5th Cir. 2011) (citation omitted).  Thus, the specific provisions dealing with "Refrigerated Trailer Maintenance" control here, as the issue at hand is which party was responsible for maintaining and repairing refrigerated trailers like the one that caused Mr. Wilcox's injury on March 17, 2020.  Further, when read as a whole, the contract unambiguously leaves preventative maintenance and repair of the interior and exterior of refrigerated trailers to NFI, Plaintiff's employer.

While the provisions in Appendix B(2) dealing with the maintenance of refrigerated trailers also require NFI to perform such work in accordance with certain safety regulations and in the manner suggested by the original manufacturer, a general contractor does not necessarily incur a duty of care or breach that duty of care by requiring an independent contractor's or subcontractor's adherence to safety practices and applicable laws.  *See Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356-57 (Tex. 1998) (citing cases).  Even if contractual adherence to safety requirements gives rise to a "narrow duty of care," there is no breach of such duty if the general contractor is unaware that the independent contractor or subcontractor violated a specific, critical

safety provision in a contract.  *Id*. at 357.  Here, Plaintiff does not argue that Walmart owed a duty of care, narrow or otherwise, *because of the language in the contract that requires NFI to adhere to certain safety regulations and manufacturer repair suggestions*, and any argument in this respect is waived.[4]  Regardless, there is no evidence that any such regulations or requirements were violated by NFI, that Walmart was aware of the violation or violations, or that its narrow retention of control with respect to any regulations or manufacturer suggestions relates to the condition or activity that caused Plaintiff's injuries.  *See id*.

Plaintiff also contends that Walmart retained or exercised control over the refrigerated trailer transported by him because it "loaded the trailer and lowered the bulkhead into the position that Plaintiff found it in with a knot on the rope that was unsecure."[5]  Pl.'s Resp. 6.  Plaintiff does not cite to any evidence to support this assertion.  He also fails to cite any legal authority to show that any such action by Walmart negated or relieved NFI of its contractual duty to perform interior and exterior preventative maintenance and repairs of the refrigerated trailers, including maintenance and repair of the frayed and worn rope that he used to secure the bulkhead to the ceiling of the trailer and the mechanism to lock the bulkhead in place by engaging a cleat in the pulley.  *See supra* n.2.  Moreover, "[i]t is the right of control, and not the actual exercise of control, which gives rise to a duty to see that an independent contractor performs work in a safe manner." *See Elliott-Williams Co.*, 9 S.W.3d at 804 (citations omitted).

---

[4] *See Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (failure to brief an issue at the district court level constitutes waiver of the issue on appeal); *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 (S.D. Tex. 2003) ("By analogy, failure to brief an argument in the district court waives the argument in that court as well.").

[5] This argument appears to be asserted by Plaintiff in support of a premises liability claim that was included for the first time in his summary judgment response. The court addresses the premises liability claim in the next section.  Out of an abundance of caution, however, it also considers this argument in addressing his negligence claim, as Plaintiff's arguments regarding both claims overlap.

**Memorandum Opinion and Order - Page 10**

For all of these reasons, the court determines that Plaintiff has failed to raise a genuine dispute of material fact as to whether Walmart retained sufficient control over the manner and means by which NFI maintained and repaired the refrigerated trailers pursuant to the Transportation Agreement. As a result, Walmart owed no legal duty to Mr. Wilcox as an employee of NFI to ensure that the refrigerated trailer transported by him on March 17, 2020, was maintained and kept in a safe working condition either by Walmart personnel or NFI. Walmart is, thus, entitled to judgment as a matter of law as to Plaintiff's negligence claim.

### B. Premises Liability Claim

For the first time in his summary judgment response, Plaintiff asserts a premises liability claim. Defendant argues in its reply, and the court agrees, that this claim is not properly before the court. Plaintiff's pleadings do not contain a premises liability claim. It is well-established that a claim raised for the first time in the context of a summary judgment motion is "not properly before the court." *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (quoting *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). Thus, any claim based on a premises liability theory raised for the first time in Plaintiff's summary judgment response is not properly before the court and will not be entertained.

### IV. Conclusion

For the reasons explained, because Plaintiff failed to raise a genuine dispute of material fact regarding his sole negligence claim, Walmart is entitled to judgment as a matter of law on this claim. Accordingly, the court **grants** Defendant's Motion for Summary Judgment (Doc. 28); and **dismisses with prejudice** Plaintiff's negligence claim. As no claims remain, judgment will issue by separate document in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 15th day of February, 2023.

Sam A. Lindsay
United States District Judge